# 25-1073

## United States Court of Appeals
## for the Second Circuit

XINUOS, INC.,

*Plaintiff-Appellant,*

v.

INTERNATIONAL BUSINESS MACHINES

CORPORATION and RED HAT, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the Southern District of
New York in Case No. 7:22-cv-9777, District Judge Cathy Seibel

## PAGE PROOF BRIEF OF PLAINTIFF-APPELLANT XINUOS, INC.

Mark M. Supko
Mark A. Klapow
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500

Warrington S. Parker, III
Joachim B. Steinberg
Jacob S. Canter
CROWELL & MORING LLP
Three Embarcadero Center
26th Floor
San Francisco, CA 94111
(415) 986-2800

*Counsel for Plaintiff-Appellant Xinuos, Inc.*

July 8, 2025

## RULE 26.1 DISCLOSURE STATEMENT

The undersigned counsel for Plaintiff-Appellant Xinuos, Inc. certifies that (i) Xinuos, Inc. is a limited liability company formed under the laws of the U.S. Virgin Islands, (ii) Xinuos, Inc. has no parent corporation, and (iii) no publicly held company owns 10% or more of Xinuos, Inc.'s stock.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................1

JURISDICTIONAL STATEMENT ..................................................3

STATEMENT OF THE ISSUES.....................................................3

STATEMENT OF THE CASE .........................................................4

SUMMARY OF THE ARGUMENT ..............................................14

ARGUMENT ..................................................................................20

I.     LEGAL STANDARDS ..........................................................20

    A.     Standard of Review .....................................................20

    B.     Summary Judgment Standard.......................................20

II.     THE DISTRICT COURT ERRONEOUSLY HELD *SUA SPONTE* THAT XINUOS'S TIMELY COPYRIGHT INFRINGEMENT CLAIM WAS A TIME-BARRED OWNERSHIP CLAIM.........................21

    A.     Ownership-Infringement Law.........................................22

    B.     The District Court Erroneously Interpreted IBM's Assertion of a Non-Exclusive License as a Challenge to Xinuos's Ownership of the Unix OS Code ...................................................23

    C.     The District Court's Misapplication of the *Walker* Factors Contributed to Its Erroneous Conclusion that Xinuos's Complaint Asserts an Ownership Claim ...........................27

    D.     IBM Never Claimed to Own the Unix OS Code or the Asserted Copyrights ...................................................30

III.     THE DISTRICT COURT COULD NOT PROPERLY HAVE GRANTED SUMMARY JUDGMENT ON ANY OF THE THEORIES DEFENDANTS-APPELLEES ARGUED BELOW ..............35

    A.     SCO Did Not Retain the Right to Sue IBM for Future Copyright Infringement When It Sold the Unix OS Code and Copyrights to Xinuos ......................................................36

    B.     The SCO-IBM Settlement Did Not Resolve the Disputed Issue of Whether IBM Is Licensed to Use the Unix OS Code...................39

    C.     Xinuos's Copyright Infringement Claim Did Not Arise from a Breach of the Project Monterey JDA ...............................42

D.  This Court Should Not Rule on Any of Defendants-Appellees'
    Arguments in the First Instance ........................................................43

CONCLUSION .........................................................................................................44

# TABLE OF AUTHORITIES

## Cases

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991) ...............................................................35

*Baker v. Weber*,
No. 19 Civ. 1093, 2021 WL 4480998 (S.D.N.Y. Sept. 30, 2021).....................41

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*,
110 F.4th 106 (2d Cir. 2024) ................................................................42

*Big East Entertainment, Inc. v. Zomba Enterprises, Inc.*,
453 F. Supp. 2d 788 (S.D.N.Y. 2006) ..............................................30

*Biondo v. Kaleida Health*,
935 F.3d 68 (2d Cir. 2019) ...............................................................20

*Boisson v. Banian, Ltd.*,
273 F.3d 262 (2d Cir. 2001) .............................................................27

*Brown v. Henderson*,
257 F.3d 246 (2d Cir. 2001) .............................................................20

*Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*,
839 F. App'x 95 (9th Cir. 2020) .........................................................36

*Dardana Ltd. v. Yuganskneftegaz*,
317 F.3d 202 (2d Cir. 2003) .............................................................43

*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007) ......................................... 16, 24, 31, 32

*Fathers & Daughters Nev., LLC v. Lingfu Zhang*,
284 F. Supp. 3d 1160 (D. Or. 2018) .............................................36, 38

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
80 F. Supp. 3d 535 (S.D.N.Y. 2015) ................................................32

*Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*,
716 F.3d 302 (2d Cir. 2013) .............................................................22

iv

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*,
    780 F.2d 189 (2d Cir. 1985) ...............................................................38

*Holcomb v. Iona Coll.*,
    521 F.3d 130 (2d Cir. 2008) ...............................................................20

*Island Software & Comput. Serv., Inc. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005) ...............................................................20

*John Wiley & Sons, Inc. v. DRK Photo*,
    882 F.3d 394 (2d Cir. 2018) ...........................................18, 24, 35, 37

*Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*,
    399 F. Supp. 3d 120 (S.D.N.Y. 2019) ................................................24

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011) .......................................................*passim*

*Langman Fabrics v. Graff Californiawear, Inc.*,
    169 F.3d 782 (2d Cir. 1998) ...............................................................20

*Merritt Hill Vineyards v. Windy Heights Vineyard, Inc.*,
    61 N.Y.2d 106 (N.Y. 1984) .................................................................42

*PK Music Performance, Inc. v. Timberlake*,
    No. 16-CV-1215, 2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018) ...............31, 32

*Righthaven LLC v. Hoehn*,
    716 F.3d 1166 (9th Cir. 2013) ......................................................36, 37

*Roberts v. BroadwayHD LLC*,
    No. 19 Civ. 9200, 2022 WL 976872 (S.D.N.Y. Mar. 31, 2022) ................*passim*

*SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*,
    879 F.3d 1062 (10th Cir. 2018) ..................................................*passim*

*Sohm v. Scholastic Inc.*,
    959 F.3d 39 (2d Cir. 2020) ...........................................................19, 42

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018) ...............................................................40

*Venticinque v. Back to Nature Foods Co.*,
No. 23-cv-1236, 2024 WL 3385136 (2d Cir. July 12, 2024) ............................43

*Walker v. Carter*,
210 F. Supp. 3d 487 (S.D.N.Y. 2016) .........................................................*passim*

*Wilson v. Dynatone Publ'g Co.*,
892 F.3d 112 (2d Cir. 2018) .................................................................................22

*Wood v. Laughlin*,
103 A.D.2d 881 (N.Y. App. Div. 1984) ...............................................................42

## Statutes

17 U.S.C. § 101 .....................................................................................16, 23, 31

17 U.S.C. § 106 ...................................................................................................37

17 U.S.C. § 205(e) ..............................................................................................38

17 U.S.C. § 501(b) .......................................................................................18, 35

17 U.S.C. § 507(b) ....................................................................................2, 15, 21

28 U.S.C. § 1291 ...................................................................................................3

28 U.S.C. § 1331 ...................................................................................................3

28 U.S.C. § 1404(a) ...........................................................................................10

## Other Authorities

Fed. R. Civ. P. 56(a)...........................................................................................20

## PRELIMINARY STATEMENT

This is a copyright infringement case. Plaintiff-Appellant Xinuos, Inc. ("Xinuos") sued Defendant-Appellee International Business Machines Corp. ("IBM") for infringing Xinuos's federally registered copyrights in certain Unix-based computer operating system source code ("Unix OS Code"). As alleged, IBM infringed Xinuos's copyrights by incorporating portions of the code into various IBM operating system ("OS") products, including products sold within the three years preceding Xinuos's Complaint.[1] IBM admitted as much below, but claimed to hold a non-exclusive license authorizing it to use the code.

Defendants-Appellees requested leave to move for summary judgment in response to the Complaint, arguing that Xinuos's copyright infringement claim was precluded by IBM's then-recent settlement of a 20-year dispute with the prior owner of the Unix OS Code. The District Court granted the ensuing motion, though not based on any legal theory presented by Defendants-Appellees. Instead, the District Court *sua sponte* recharacterized Xinuos's copyright infringement claim as a dispute over Xinuos's *ownership* of the Unix OS Code that purportedly arose outside the three-year limitations period of 17 U.S.C. § 507(b)—even though IBM never

---

[1] Xinuos also asserted antitrust and unfair competition claims against IBM and Defendant-Appellee Red Hat, Inc. ("Red Hat"), but Xinuos voluntarily dismissed those claims after the District Court granted summary judgment on the copyright infringement claim. *See* JA__-__ [4/2/25 Jt. Stip. of Voluntary Dismissal (ECF No. 255)].

claimed any ownership interest in the code. The District Court's decision was erroneous.

In its summary judgment ruling, the District Court correctly observed that "ownership is not precisely what is at issue here, but rather *the question is whether defendant obtained a license that gave it the right to use the code*." JA___ [1/22/24 SJ Hr'g Tr. at 30:14-17 (ECF No. 166)] (emphasis added). IBM's alleged license, however, could not have supported a proper grant of summary judgment on Xinuos's infringement claim because, at a minimum, Xinuos disputed the existence of the license. Moreover, it was not legally possible for the prior owner of the Unix OS Code to effectively grant IBM a *nunc pro tunc* license to copyrights it no longer owned as part of their settlement.

The District Court's reliance on IBM's assertion of an alleged license to recharacterize Xinuos's copyright infringement claim as an ownership claim was contrary to black letter law. By statute, a non-exclusive copyright license conveys no ownership rights. Accordingly, a dispute over whether an alleged infringer holds such a license is not an ownership challenge, regardless of when IBM first asserted its license defense. A new infringement claim accrues each and every time an infringer reproduces a copyrighted work without authorization, so it was error for the District Court to find that Xinuos's claim against infringements that occurred

within the three-year statute of limitations are time-barred. Xinuos's copyright infringement claim should be reinstated.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Xinuos's copyright infringement claim under 28 U.S.C. § 1331 (federal question) because the cause of action arose under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq*. The District Court entered final judgment on April 2, 2025 [ECF No. 256], and Xinuos filed a timely notice of appeal on April 25, 2025 [ECF No. 259]. This Court has subject matter jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether the District Court erroneously granted summary judgment for Defendants-Appellees by *sua sponte* treating Xinuos's copyright infringement claim as a copyright ownership claim based on IBM's assertion of a non-exclusive license to use Xinuos's copyrighted computer code, particularly when IBM never claimed to have such an ownership interest.

2.     Whether the District Court erroneously granted summary judgment for Defendants-Appellees on Xinuos's copyright infringement claim despite the existence of disputed issues of material fact regarding IBM's alleged non-exclusive license to use Xinuos's copyrighted code.

3

## STATEMENT OF THE CASE

This is an appeal from a decision by the Honorable Judge Cathy Seibel of the U.S. District Court for the Southern District of New York granting summary judgment for Defendants-Appellees on Xinuos's copyright infringement claim. Xinuos initiated this litigation to remedy IBM's ongoing infringement of copyrights protecting the Unix OS Code—computer source code for an innovative Unix-based operating system that IBM has been incorporating into its OS products for years. Contrary to the District Court's finding that Xinuos's infringement claim turns on a dispute over ownership of the Unix OS Code, IBM claims only to hold a non-exclusive license allegedly granted by a prior owner of the code, The SCO Group ("SCO"), before SCO declared bankruptcy and sold the code and associated copyrights to Xinuos more than a decade ago.

At the time Xinuos filed its Complaint, IBM and SCO were still involved in a largely dormant (due to SCO's bankruptcy) litigation that began nearly twenty years earlier concerning IBM's alleged misappropriation of the Unix OS Code through its fraudulent participation in a joint development initiative with SCO in the 1990s. Throughout that litigation, SCO denied that IBM obtained a continuing license to the Unix OS Code by operation of their joint development agreement. IBM was apparently content to let SCO's claims languish unresolved. That abruptly changed when Xinuos sued IBM for copyright infringement.

IBM rushed to settle the litigation with SCO after Xinuos filed its Complaint, obviously hoping to secure a release that would shield it from Xinuos's copyright infringement claim. The settlement, however, did not resolve the issue of whether IBM held a non-exclusive license to use the code at the time SCO sold the code to Xinuos—the parties effectively just agreed to disagree. Accordingly, the District Court's heavy reliance on IBM's disputed license rights was misplaced.

### A.   Factual Background

#### 1.   The Parties

Xinuos is a corporation organized and existing under the laws of the U.S. Virgin Islands. JA___ [3/31/21 Compl., ¶ 22 (ECF No. 1)].

IBM is a New York corporation that develops and sells, among other things, operating system software for server computers. JA___, ___, ___ [*Id.*, ¶¶ 3, 14, 23].

#### 2.   The Alleged License

In 1998, IBM and The Santa Cruz Operation ("Santa Cruz") entered into a joint development agreement ("JDA") for a project ("Project Monterey") aimed at developing an IA-64 Operating System for release by IBM. JA___-___ [JDA (ECF No. 124-04)]; JA___ [1/22/24 SJ Hr'g Tr. at 6:14-15, 6:21-7:1].[2] Supplement B to

---

[2] IA-64 was a then-new Intel 64-bit processor architecture, which replaced an older 32-bit standard. The Unix OS Code allows for, among other things, applications created for a 32-bit processor architecture to run on a 64-bit processor architecture. JA___ [Rule 56.1 Stmt. ¶ 5 (ECF No. 123)].

the JDA identified the Santa Cruz code to which IBM would be given access "solely for development of the IA-64 Product." JA___-___ [JDA Suppl. B, § 4 at 6 (ECF No. 127-03)]. The JDA also specified that IBM could receive a continuing, non-exclusive license to any of the identified Santa Cruz code that was included in a "general availability" release of the IA-64 product (*i.e.*, "IA-64 Product Release 1"). *See* JA___-___ [*Id.*]; JA___ [JDA, § 2.0(d)(2) at 7 (ECF No. 124-04); JA___ [JDA Amend. 5 at 11 (ECF No. 127-04)]; *see also SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*, 879 F.3d 1062, 1070 (10th Cir. 2018) ("Thus, to the extent that IBM wanted a 'worldwide, non-exclusive, royalty free' license to the coveted SVr4 code, it needed to wait until there was a generally available release of the IA-64 Product which included that code."). In 1999, IBM requested that Santa Cruz agree to a Supplement C that would have allowed IBM to also use the Santa Cruz code in *other* IBM OS products (*e.g.*, AIX operating systems for the Power PC architecture, OS/390 and OS/400 operating systems), but Santa Cruz declined IBM's request. *See* JA___-___ [JDA Suppl. C (unsigned), § 7.3 at 3, 6 (ECF No. 127-05)].

In May of 2001, IBM purported to release its IA-64 OS product. JA___ [Utah Lit. SJ Opp'n, ¶ 52 at 11 (ECF No. 124-09)]. But IBM's software release was not a "general availability" release, which was a precondition for IBM to be granted a continuing license to use the Santa Cruz code for any purpose other than for "the development of IA-64 Produce Release 1" if the JDA was terminated. *See* JA___

[JDA Amend. 5, § 2 at 12 (ECF No. 127-04)]; JA___ [Utah Lit. Stmt. of Disputed Facts, ¶¶ 64-66 (ECF No. 127-02)]; *SCO Grp.*, 879 F.3d at 1072 (finding that IBM's release lacked a compiler required for execution by processing hardware, was offered free of charge and without support, was not on IBM's price lists, and was not marketed).[3] IBM terminated the JDA a short time later. JA___ [1/22/24 SJ Hr'g Tr. at 9:3-5].

### 3. The SCO Dispute, Phase One

In 2003, the successor-in-interest to Santa Cruz, Caldera, Inc. ("Caldera"), sued IBM in the District of Utah (the "Utah Litigation"), asserting claims arising out of IBM's alleged misconduct in connection with Project Monterey. *See SCO Grp.*, 879 F.3d at 1074-75. Shortly after initiating the Utah Litigation, Caldera changed its name to The SCO Group, Inc. ("SCO"). JA___ [1/22/24 SJ Hr'g Tr. at 9:8-9].

During discovery in the Utah Litigation, SCO learned that IBM had also improperly used some of SCO's code developed by Santa Cruz after 1995 (*i.e.*, the Unix OS Code).[4] *SCO Grp.*, 879 F.3d at 1085. SCO requested leave to file an amended complaint adding a claim that IBM infringed SCO's copyrights in that

---

[3] The Tenth Circuit determined that "a reasonable jury could find that this [beta] version was not a *generally available* release of the product and thus did not entitle IBM to a royalty-free license to the SVr4 code included therein." *SCO Grp.*, 879 F.3d at 1072 (emphasis in original).

[4] It had previously been decided in a separate litigation between SCO and Novell that SCO did not own the copyrights to Unix code developed by Novell prior to 1995, when Novell sold its Unix technologies to SCO. *SCO Grp.*, 879 F.3d at 1074.

post-1995 code, but the district court denied the request based on the relatively advanced stage of the case and the Tenth Circuit affirmed. *Id.* at 1085-86. In reaching that decision, the Tenth Circuit held that the copyright infringement claim based on the post-1995 code "is different from SCO's misappropriation claim because the copyright theory does not depend upon proof of bad faith, while misappropriation does." *Id.* at 1085 n.21.

### 4. Xinuos's Acquisition of the Unix OS Code

SCO filed for bankruptcy in 2007, while the Utah Litigation was pending. The Trustee and Xinuos subsequently negotiated an Asset Purchase Agreement ("APA"), executed in 2011, that transferred to Xinuos all rights in SCO's intellectual property assets and business operations.[5] JA___ [1/22/234 SJ Hr'g Tr. at 10:8-11]; JA___-___ [2/17/23 Snyder Decl., ¶¶ 9-18 (ECF No. 127-44)].

While negotiating the APA, the Trustee explained to SCO that "all assets of SCO are being transferred except for those that are excluded. We can add things to the excluded schedule if you believe necessary for the [Utah] litigation with the caveat that we have to give [Xinuos] everything they need to operate the business." JA___ [1/19/11 Email String at 4 (ECF No. 127-27)]. Notably, in listing the excluded assets, the parties did not list any claims that could potentially accrue to

---

[5] Xinuos's corporate name at the time was UnXis, Inc. JA__ [2/17/23 Snyder Decl., ¶ 9 (ECF No. 127-44)].

Xinuos *in the future*, including claims against IBM for future infringement of copyrights in any of the Unix OS Code. JA___-___ [2/17/23 Snyder Decl., ¶¶ 11-15 (ECF No. 127-44)]; JA___-___ [2/16/23 Bolandz Decl., ¶¶ 2-6 (ECF No. 127-43)]; JA___-___ [9/22/21 Bankruptcy Hr'g Tr. at 24:7-11, 25:3-5 (ECF No. 127-42)]; JA___-___ [APA Schedule, § 2.1(c) at 10 and §§ 1.40, 2.2 at 7, 11 (ECF No. 124-03)].

### 5.  The SCO Dispute, Phase Two

For the next eight years, Xinuos operated a business directed to development, sales and support for Unix-based server operating system products. JA___-___ [2/17/23 Snyder Decl., ¶¶ 18, 21 (ECF No. 127-44)]. Very little occurred in the SCO bankruptcy or the Utah Litigation during that time. *See* JA___-___ [Bankruptcy Lit. Docket (ECF No. 127-46)]. Once Xinuos filed the present lawsuit, however, IBM hastily pursued settlement of the Utah Litigation. JA___ [1/22/24 SJ Hr'g Tr. at 16:13-21].

Xinuos appeared in the bankruptcy proceeding to object to certain language IBM included in a proposed settlement agreement that purported to impact Xinuos's rights in the Unix OS Code. JA___ [*Id*. at 17:4-10]; JA___-___ [Opp'n to Order Approving Settlement (ECF No. 127-41)]. Xinuos's objections were heard by the bankruptcy court, and at the hearing IBM's counsel raised its current theory that Xinuos cannot assert any claim for copyright infringement related to the Unix OS

9

Code that Xinuos acquired from SCO. [1/22/24 SJ Hr'g Tr. at 17:4-10]. Unsurprisingly, the bankruptcy court declined to decide whether the proposed settlement had any bearing on Xinuos's right to pursue infringement claims accruing after the effective date of the APA:

> [E]ach of you is concerned the other is planting a landmine. That either somehow this Court will bless and recognize causes of action that presumably IBM will seek to dismiss . . . or IBM will use this to say in fact you know [I] found that -- that any and all claims and causes [of] action that relate to these assets were the subject of the Utah litigation . . . Xinuos bought assets. And, if there are claims or causes of action arising from them, another Court of competent jurisdiction will decide that. That's an issue involving two separate non-debtors.

JA___-___ [9/22/21 Bankruptcy Hr'g Tr. at 23:22-24:11 (ECF No. 127-42)]; JA___ [1/22/24 SJ Hr'g Tr. at 17:7-25]. The bankruptcy court then approved the settlement without endorsing either party's position. JA___-___ [9/22/21 Bankruptcy Hr'g Tr. at 52:21-53:8 (ECF No. 127-42)].

## B.    Procedural History

Xinuos filed the Complaint initiating this litigation on March 31, 2021, in the District of the Virgin Islands (where Xinuos is incorporated), asserting a claim against IBM for copyright infringement, and claims against both IBM and Red Hat for antitrust violations, unfair competition, and unjust enrichment under U.S. and/or Virgin Islands law. JA___-___ [3/31/21 Compl., ¶¶ 175-229 (ECF No. 1)]. On November 14, 2022, the Virgin Islands court granted Defendants-Appellees' motion

to transfer the case to the Southern District of New York on convenience grounds pursuant to 28 U.S.C. § 1404(a).

Shortly after the case was transferred to New York, the Honorable Judge Cathy Seibel granted Defendants-Appellees' request for leave to file a motion for summary judgment on Xinuos's copyright infringement claim (and a renewed motion to dismiss Xinuos's other claims). JA___-___ [1/17/23 Minute Order]. During the pre-motion conference, Defendants-Appellees' counsel told the District Court that the proposed summary judgment motion could be decided based solely on the terms of the relevant agreements, without the need for any fact discovery. JA___-___ [1/17/23 Pre-Mot. Hr'g Tr. at 6-7 (ECF No. 127-45)]. The summary judgment motion that Defendants-Appellees filed on March 6, 2023, however, relied on 54 exhibits and a 97-paragraph statement of allegedly undisputed "facts."

Following full briefing on both motions, but without oral argument, Judge Seibel issued a bench ruling on January 22, 2024, in which she: (a) granted Defendants-Appellees' motion for summary judgment on Xinuos's copyright infringement claim, and (b) granted-in-part and denied-in-part Defendants-Appellees' motion to dismiss, allowing Xinuos's federal antitrust claims to proceed but dismissing all claims based on Virgin Islands law. JA___ [1/22/24 SJ Hr'g Tr. at 64:13-18]. As is often her practice, Judge Siebel did not issue a written opinion and instead designated the hearing transcript as her ruling. JA___ [*Id.* at 3:3-14].

Regarding the summary judgment motion on Xinuos's copyright infringement claim, the District Court framed the issue before it as follows:

> So the operative question here is when the claim at issue accrued. If it was before the APA was signed, the claim belongs to SCO, and SCO retained and eventually released it, and plaintiff cannot sue on it now. If it accrued after the APA, the plaintiff is free to sue on it.

JA___ [*Id.* at 27:15-19]. The District Court explained that "[t]he question[,] then[,] is whether the plaintiff's claims are rooted in the contested assertion of [an] ownership interest in the copyright." JA___ [*Id.* at 29:15-17] (quoting *Walker v. Carter*, 210 F. Supp. 3d 487, 505 (S.D.N.Y. 2016)). The District Court recognized that the facts presented a dispute over whether IBM was licensed to use the Unix OS Code rather than a dispute over ownership of that code, but nevertheless concluded that the same analysis should apply:

> I conclude that plaintiff is asserting an ownership claim. *As a preliminary matter, I recognize that, quote/unquote, ownership is not precisely what is at issue here, but rather the question is whether defendant obtained a license that gave it the right to use the code.* But it seems to me that the analysis ought to be the same. Is the dispute about whether the defendant had the legal right to use the code, or is it about whether or not the defendant, in fact, used it?

JA___ [1/22/24 SJ Hr'g Tr. at 30:13-21] (emphasis added).

Having thus equated IBM's assertion of an alleged license to an ownership challenge, Judge Seibel then applied a modified version of the four-factor *Walker* analysis in which she "reframed" certain factors to focus on "right to use" instead of ownership. JA___ [*Id.* at 30:22-25] ("Thus the first two factors ought to be reframed

here as whether plaintiff concedes that the right to use is at the heart of the dispute and whether defendant concedes it lacks the right to use."). The District Court then explained how application of this modified version of the *Walker* analysis led to its conclusion that "the claim here is, for accrual purposes, an ownership claim" that "accrued well before Xinuos acquired its interest in the code in 2011." JA___ [*Id.* at 30:22-33:23]. Consequently, the District Court held that "the claim belonged to SCO, and SCO has released defendants from it. Defendants are therefore entitled to summary judgment on the copyright claim." JA___ [*Id.* at 34:6-8].

Xinuos timely moved for reconsideration, arguing that the District Court erred by characterizing Xinuos's copyright infringement claim as an ownership claim when "IBM has not claimed to own the asserted copyrights or the source code they protect" and instead "has claimed only that it holds a nonexclusive license to use the copyrighted works." JA___ [2/5/24 Mot. for Recon. Mem. at 4 (ECF No. 146)]. The Court issued a bench ruling denying the motion on April 3, 2024, explaining:

> Plaintiff's argument that I mischaracterized the right to use issue as an ownership dispute is not frivolous, as I've already acknowledged that ownership is not precisely at issue, but I do not think that whether plaintiff has the right to use the Code is properly characterized as an infringement dispute where the nature, extent or scope of copying is not at issue.

JA___ [4/3/24 Mot. for Recon. Hr'g Tr. at 8:7-13 (ECF No. 171)].

Regarding the antitrust claims that survived Defendants-Appellees' motion to dismiss, Xinuos voluntarily dismissed them with prejudice on April 1, 2025,

simplifying the case. JA___-___ [4/1/25 Jt. Stip. of Voluntary Dismissal (ECF No. 255)]. Thus, only the copyright infringement claim is at issue in this appeal.

The District Court entered final judgment on April 2, 2025, citing to its earlier summary judgment rulings on the copyright infringement claim and Xinuos's voluntary dismissal of the remaining claims. JA___-___ [4/2/25 Judgment (ECF No. 256)]. Xinuos timely filed a notice of appeal to this Court on April 25, 2025. JA___-___ [4/25/25 Notice of Appeal (ECF No. 259)].

### C.    Rulings Presented for Review

The following rulings by the District Court are presented for review:

- Bench Ruling on Defendants' Motion for Partial Summary Judgment on Plaintiff's Copyright Claim, issued January 22, 2024 (JA___-___) [1/22/24 SJ Hr'g Tr.].

- Minute Entry re Oral Decision Granting Defendants' Motion for Partial Summary Judgment on Plaintiff's Copyright Claim, entered January 22, 2024 (JA___).

- Bench Ruling on Xinuos's Motion for Reconsideration of the Court's Bench Ruling Granting Defendants' Motion for Partial Summary Judgment on Plaintiff's Copyright Claim, issued April 3, 2024 (JA___-___) [4/3/24 Mot. for Recon. Hr'g Tr.].

- Minute Entry re Oral Decision Denying Xinuos's Motion for Reconsideration of the Court's Bench Ruling Granting Defendants' Motion for Partial Summary Judgment on Plaintiff's Copyright Claim, entered April 3, 2024 (JA___).

### SUMMARY OF THE ARGUMENT

The District Court erroneously granted summary judgment in favor of Defendants-Appellees on Xinuos's timely copyright infringement claim arising

from IBM's unauthorized inclusion of copyrighted Unix OS Code in products sold by IBM dating back three years before the filing of the Complaint and continuing thereafter. Despite the fact that IBM never claimed to own Xinuos's copyrighted code, the District Court relied on IBM's claim to hold a non-exclusive license to the code—an allegation that Xinuos disputed—to not only mischaracterize Xinuos's copyright infringement claim as an ownership claim, but also to find that claim time-barred because IBM first asserted its license defense more than twenty years ago in litigation with the prior owner of the code. The District Court's treatment of IBM's *de facto* license defense, however, was contrary to both statutory law and controlling precedent confirming that a non-exclusive license conveys no ownership rights to the licensee, and thus a dispute over the existence or scope of such a license is an infringement issue.

### A. The District Court Erroneously Interpreted Xinuos's Timely Infringement Claim as a Time-Barred Ownership Claim

By statute, any civil action under the Copyright Act must be brought "within three years after the claim accrued." 17 U.S.C. § 507(b). A claim for copyright infringement accrues each time an alleged infringer exercises one of the exclusive rights enumerated in the Copyright Act without authorization of the copyright owner, and thus "an infringement action may be commenced within three years of *any* infringing act, regardless of any prior acts of infringement[.]" *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (citation omitted, emphasis in original). By

contrast, a copyright ownership claim accrues only once, when a reasonably diligent copyright owner would have been put on notice of a challenge to his or her ownership of the relevant copyright. *Id.* A time-barred ownership claim will bar a copyright infringement claim if "the infringement claim cannot be decided without adjudication of a genuine dispute as to the plaintiff's ownership of the copyright." *Id.* at 226.

In moving for summary judgment at the outset of the case—before answering the Complaint and before discovery had begun—Defendants-Appellees did not contend that IBM owned Xinuos's asserted copyrights or the Unix OS Code but instead contended that IBM held a non-exclusive license that was allegedly (and disputedly) granted during a joint development project with the prior owner of the code. *See, e.g.*, JA___ [3/6/23 SJ Reply at 4 (ECF No. 130)] (Defendants-Appellees conceding that "*Xinuos's ownership of the asserted copyrights is assumed for purposes of this motion*, which concerns [the former owner's] retention of accrued claims, not Xinuos's lack of copyright ownership") (emphasis added); JA___ [3/6/23 SJ Mem. at 15 (ECF No. 122)] (Defendants-Appellees arguing that "[t]he only dispute is whether IBM obtained a license to the code or used it without permission"). The District Court nevertheless decided on its own initiative that IBM's assertion of an alleged license was akin to a challenge to Xinuos's ownership of the Unix OS Code, even though it recognized that "ownership is not precisely

16

what is at issue here" and notwithstanding black letter law confirming that a non-exclusive license conveys no ownership rights to the licensee. *See* JA___ [1/22/24 SJ Hr'g Tr. at 30:14-17]; *see also Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007); 17 U.S.C. § 101 (defining "transfer of copyright ownership").

Having misinterpreted IBM's assertion of license rights as an ownership challenge, the District Court then applied a four-factor analysis that courts in this Circuit have used to determine when a copyright infringement claim should be considered a copyright ownership claim. *See Walker*, 210 F. Supp. 3d at 505 (explaining factors to consider for ownership-infringement analysis). In applying that analysis, however, the District Court skewed the results by erroneously "reframing" several factors to shift the focus from ownership to mere assertion of "rights"—such as an alleged right to use a copyrighted work pursuant to a non-exclusive license—leading to the legally unsupportable conclusion that Xinuos's copyright infringement claim was actually an ownership claim that had accrued twenty years earlier when IBM first asserted its license defense in litigation brought by the prior owner of the Unix OS Code.

### B. None of the Grounds Argued by IBM Below Provide an Alternative Basis for Affirming the District Court's Erroneous Grant of Summary Judgment

While the District Court granted summary judgment in favor of Defendants-Appellees based on a flawed ownership-infringement rationale of its own devising,

the record also shows that none of the grounds on which Defendants-Appellees actually moved for summary judgment provide a supportable alternative basis for affirming the District Court's erroneous decision.

First, Defendants-Appellees' argument that Xinuos lacked standing to sue IBM for copyright infringement because SCO purportedly retained that right is contrary to well-settled law. By statute, only "[t]he legal or beneficial owner of an exclusive right under a copyright" has standing to sue, and then only for "any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Accordingly, it was not legally possible for SCO to retain the right to sue IBM for *future* infringement when it sold the copyrighted Unix OS Code to Xinuos, let alone to release IBM from any such claim more than a decade later. *See, e.g.*, *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 401-10 (2d Cir. 2018) (citing authority). Defendants-Appellees' argument thus fails as a matter of law.

Second, Defendants-Appellees' argument that IBM's recent settlement with SCO somehow confirmed the existence of IBM's alleged non-exclusive license rests on disputed issues of material fact that preclude summary judgment. Long before that settlement, the Tenth Circuit recognized that a reasonable jury could find from the evidence that IBM had *not* satisfied the contractual requirements for securing a continuing non-exclusive license to the code. *SCO Grp.*, 879 F.3d at 1072, n.4. In

18

this case, Xinuos genuinely disputed Defendants-Appellees' allegations concerning both the existence *and scope* of the purported license. JA___-___ [3/6/23 Rule 56.1 Resp. at 6-8 (ECF No. 128)]. Moreover, the mutual releases contained in the SCO-IBM settlement agreement expressly did *not* resolve IBM's affirmative license defense, let alone do so in IBM's favor. *See* JA___ [8/17/21 SCO-IBM Settlement and Release, ¶ 4.1 at 11(ECF No. 124-45)] (emphasizing no admissions of liability).

Third, Defendants-Appellees' argument that Xinuos's copyright infringement claim arises from a breach of the Project Monterey JDA and is therefore time-barred under the terms of that contract fails on both factual and legal grounds. Xinuos's claim in this case is that IBM infringed Xinuos's copyrights by incorporating the Unix OS Code into its server OS products without authorization from Xinuos *after Xinuos bought full title to those assets from SCO*. JA___-___ [3/31/21 Compl., ¶¶ 6, 43, 176-83 (ECF No. 1)]. Neither Xinuos's infringement claim nor IBM's *de facto* license defense arises from a breach of the JDA, which merely established preconditions that IBM had to meet to receive a continuing license to the code. *See, e.g., Sohm v. Scholastic Inc.*, 959 F.3d 39, 46-47 (2d Cir. 2020) (failure to meet conditions that would entitle defendant to a license "sound in copyright infringement, not breach of contract") (internal quotation marks and citation omitted). In addition, the factual issue of whether IBM satisfied those preconditions

was disputed both in the Utah Litigation and below. Thus, summary judgment could not properly have been awarded to Defendants-Appellees on this basis either.

For all the foregoing reasons, the District Court's erroneous grant of summary judgment in favor of Defendants-Appellees on Xinuos's timely copyright infringement claim should be reversed.

## ARGUMENT

### I. LEGAL STANDARDS

#### A. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *See, e.g.*, *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005) (citing *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996)); *Langman Fabrics, a div. of Blocks Fashion Fabrics, Inc. v. Graff Californiawear, Inc.*, 160 F.3d 106, 110 (2d Cir.), *amended*, 169 F.3d 782 (2d Cir. 1998) ("We review the district court's entry of summary judgment *de novo*.") (citing *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) (emphasis added)).

#### B. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Biondo v. Kaleida Health*, 935 F.3d 68, 73 (2d Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks and citation omitted).

## II. THE DISTRICT COURT ERRONEOUSLY HELD *SUA SPONTE* THAT XINUOS'S TIMELY COPYRIGHT INFRINGEMENT CLAIM WAS A TIME-BARRED OWNERSHIP CLAIM

In its bench ruling granting Defendants-Appellees' summary judgment motion, the District Court framed the central issue before it as follows:

> If this case presents an ownership claim, it occurred only once when the code's owner was on notice that defendant was exercising the right incompatible with its ownership, which would be when defendant started using the code it allegedly stole in 2001. In that event the claim belongs to SCO, which owned the copyright, then retained the claim by carving it out of the APA, and tried to assert the claim in 2004 in the Utah litigation. If this is an infringement claim, plaintiff can sue for any product defendant released going back three years from when it filed suit.

JA___ [1/22/24 SJ Hr'g Tr. at 30:3-12]. Although the foregoing accurately describes the analytical framework for a case in which there is uncertainty as to whether an asserted copyright claim is either an infringement claim or an ownership claim, there should have been no uncertainty below because IBM claimed only to hold a non-exclusive license to use the Unix OS Code. Moreover, the District Court erred in its

application of the ownership-infringement analysis by shifting the focus of the individual factors away from ownership.

## A.     Ownership-Infringement Law

A civil action under the Copyright Act must be brought "within three years after the claim accrued." 17 U.S.C. § 507(b). A copyright infringement claim accrues each time there is a new infringement, and thus "an infringement action may be commenced within three years of *any* infringing act, regardless of any prior acts of infringement[.]" *Kwan*, 634 F.3d at 228 (citing *Merchant v. Levy*, 92 F.3d 51, 57 n.8 (2d Cir. 1996)) (emphasis in original). But a copyright ownership claim "accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Id.* (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). "[A] time-barred ownership claim will bar a claim for copyright infringement where … the infringement claim cannot be decided without adjudication of a genuine dispute as to the plaintiff's ownership *of the copyright*." *Id.* at 226 (emphasis added).

In the Second Circuit, there are "at least three types of events that can put a potential plaintiff on notice and thereby trigger the accrual of an ownership claim: public repudiation; private repudiation in communications between the parties; and implicit repudiation 'by conspicuously exploiting the copyright without paying royalties.'" *Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 118 (2d Cir. 2018)

22

(quoting *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013)). Notably, implicit repudiation of ownership does not arise simply as a result of a non-exclusive licensee's failure to pay required royalties—a classic copyright infringement issue—but rather requires the existence of a dispute between alleged co-owners of a copyright over entitlement to royalties. *See Friedrich*, 716 F.3d at 317 (providing examples of how ownership claim can accrue, including "when *alleged co-owners* learn they are entitled to royalties that they are not receiving") (citing *Merchant*, 92 F.3d at 53, 56; *Stone*, 970 F.2d at 1048) (emphasis added).

### B.  The District Court Erroneously Interpreted IBM's Assertion of a Non-Exclusive License as a Challenge to Xinuos's Ownership of the Unix OS Code

The District Court correctly observed that this case turns on a license dispute, JA___ [1/22/24 SJ Hr'g Tr. at 30:13-17], but then mischaracterized that license dispute as an ownership challenge rather than an infringement issue. Disputes over the existence or scope of a non-exclusive license are definitionally issues of infringement, not ownership. 17 U.S.C. § 101 ("A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, *but not including a nonexclusive license*.") (emphasis added); *see also Roberts v. BroadwayHD LLC*,

No. 19 Civ. 9200, 2022 WL 976872, at *9 (S.D.N.Y. Mar. 31, 2022) ("*Roberts II*") (characterizing dispute over scope of alleged license as presenting an infringement issue).

Consistent with how Defendants-Appellees argued for summary judgment below, the District Court acknowledged that "ownership is not precisely what is at issue here, but rather *the question is whether defendant obtained a license that gave it the right to use the code*." JA___ [1/22/24 SJ Hr'g Tr. at 30:13-17] (emphasis added). That should have ended the District Court's ownership-infringement analysis because an alleged non-exclusive license conveys no ownership rights, and thus a dispute over the existence of such a license cannot properly be characterized as a dispute over ownership of an asserted copyright or the underlying work. *See, e.g.*, *Davis*, 505 F.3d at 101 (confirming that a non-exclusive license is not an ownership interest). Nevertheless, the District Court determined that "the analysis ought to be the same," and proceeded to treat the license dispute as an ownership dispute for purposes of characterizing Xinuos's copyright claim. JA___ [1/22/24 SJ Hr'g Tr. at 30:17-18]. That result was the opposite of what the law required.

Although it appears the Second Circuit has not expressly addressed application of the *Walker* ownership-infringement analysis in the context of a license dispute, courts in this Circuit have routinely recognized that use of copyrighted material in a manner that exceeds the scope of a non-exclusive license presents an

infringement issue. *See, e.g., John Wiley*, 882 F.3d at 410 (explaining that a non-exclusive license "serve[s] only to 'immunize[] the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor'," quoting *Davis*, 505 F.3d at 100); *see also Roberts II*, 2022 WL 976872, at *9 (discussed below); *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 129 (S.D.N.Y. 2019) ("Where, as here, a copyright owner claims that a defendant acted outside the scope of its license he or she properly claims copyright infringement[.]") (cleaned up).

In *Roberts II*, discussed in the District Court's bench ruling, the parties were not disputing copyright ownership; rather, the plaintiff's claim was that the defendants had exceeded the scope of their limited license to perform and record the copyrighted vocal arrangements by sublicensing others to do so. *Roberts II*, 2022 WL 976872, at *9. Judge Failla accurately observed that "[c]ourts have recognized similar allegations as stating a claim for copyright infringement." *Id.* (citing cases). Notably, none of the cases cited in the District Court's bench ruling, or any of the cases cited by Defendants-Appellees below, held that a dispute over a non-exclusive license *in the absence of an express or implied claim of ownership by the defendant* constitutes an ownership claim.

Here, as in *Roberts II*, the parties are not disputing who owns the asserted copyrights or the underlying Unix OS Code; rather, IBM only claims to hold a non-

25

exclusive license that allegedly permitted it to continue using the code after the termination of Project Monterey. JA___ [3/6/23 SJ Mem. at 15 (ECF No. 122)] (confirming that "[t]he only dispute is whether IBM obtained a license to the code or used it without permission."). And like the plaintiff in *Roberts II*, Xinuos contends that while IBM may have been authorized to use the copyrighted code for a limited purpose during Project Monterey (*i.e.*, to create an IA-64 OS product), IBM exceeded the scope of that authorization by using the code in various OS products after Project Monterey ended—including after Xinuos purchased the Unix OS Code and associated copyrights from SCO.[6] *See* JA___-___ [3/6/23 SJ Opp'n at 3-4 (ECF No. 126)] ("In order to receive a continuing license to use the code for an IA-64 product, IBM was required to complete a 'general availability' release of the IA-64 product .... IBM's purported release lacked any of the hallmarks of a 'general availability release' under the JDA.") (record citations omitted). Thus, under the

---

[6] In distinguishing the present case over *Roberts II*, the District Court misapprehended Xinuos's position when it stated: "[*In Roberts II*], plaintiff argued [that] defendants had a legitimate license and went beyond what the license allowed while, here, plaintiff argues that defendant had and has no right to use the Code at all." JA___ [4/3/24 Mot. for Recon. Hr'g Tr. at 6:21-24]. To the contrary, Xinuos's position from the beginning of this case has been that SCO granted IBM a limited license that allowed IBM to use the Code *during Project Monterey* to develop an IA-64 product, but IBM failed to satisfy the contractual requirements for obtaining a *continuing* non-exclusive license to use the code for any other purpose. *See, e.g.*, JA___-___ [3/6/23 SJ Opp'n at 3-4 (ECF No. 126)]; JA___-___ [3/31/21 Compl., ¶¶ 55-57 (ECF No. 1)].

rationale of *Roberts II*, Xinuos's Complaint asserts an infringement claim, not an ownership claim.

### C. The District Court's Misapplication of the *Walker* Factors Contributed to Its Erroneous Conclusion that Xinuos's Complaint Asserts an Ownership Claim

The District Court's determination that a license dispute should be treated the same as an ownership dispute, JA___ [1/22/24 SJ Hr'g Tr. at 30:13-21], fatally infected its evaluation of the factors that courts in the Second Circuit commonly consider in an ownership-infringement analysis:

> [1] whether the plaintiff concedes in any filings that questions of *ownership* and authorship are at the heart of the claim, [2] whether the plaintiff[']s copyright *ownership* is conceded by the defendant, [3] whether the plaintiff alleges anything specific about the means of infringement, and [4] whether the lawsuit is between two parties who claim *ownership* of the copyrights.

JA___-___ [*Id.* at 29:20-30:2] (citing *Walker*, 210 F. Supp. 3d at 505) (emphasis and reference numbers added). A legally correct evaluation of the *Walker* factors compels a finding that Xinuos's complaint states an infringement claim, not an ownership claim.

As to the first *Walker* factor, far from conceding that "questions of ownership and authorship" are at the heart of its claim, Xinuos contends that ownership and authorship have *nothing* to do with this dispute save for Xinuos's ownership of the asserted copyrights being a required element of its infringement claim. *See Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001) (citing *Feist Publ'ns, Inc. v. Rural*

*Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). And as to the second factor, as discussed above, IBM did not dispute Xinuos's ownership of the copyrights at issue (or of the Unix OS Code) and instead claimed only to hold a non-exclusive license allegedly granted during Project Monterey. JA___ [3/6/23 SJ Mem. at 15 (ECF No. 122)]. Thus, on their face, these factors squarely favor a finding that Xinuos's Complaint presents an infringement claim.

The District Court reached its contrary conclusion on the first two *Walker* factors by erroneously "reframing" them to focus on "right to use" instead of ownership, without citing any authority for doing so. *See* JA___-___ [1/22/24 SJ Hr'g Tr. at 30:22-31:19]. And it was only this reframing of the factors to eliminate any reference to "ownership," and not the nature of the actual dispute between the parties, that resulted in those factors favoring an ownership claim.

The same error infected the District Court's analysis of the fourth *Walker* factor, which is supposed to assess whether the lawsuit is between two parties "who claim ownership of the copyrights." *See Walker*, 210 F. Supp. 3d at 505 (internal quotation marks and citation omitted). Once again, the District Court "reframed" the factor by replacing "ownership" with "right to use," thereby greatly expanding the scope of what would be considered an ownership dispute. *See* JA___ [1/22/24 SJ Hr'g Tr. at 33:13-16]. Indeed, it is difficult to conceive of a disputed copyright infringement claim that would *not* be viewed as an ownership claim under the

District Court's modified *Walker* analysis, since even an invalidity defense can be characterized as an assertion of a "right to use" the work covered by the allegedly invalid copyright.

Finally, in support of its finding that the third *Walker* factor favored an ownership claim, the District Court stated that "not only does plaintiff not allege any specific [sic] about the means of infringement beyond saying defendant incorporated into its products code that it stole, but [the] defendant does not seem to dispute that the code is, in fact, incorporated into its product." JA___ [*Id*. at 31:20-24]. As an initial matter, whether IBM disputes that Xinuos's copyrighted code is in the accused products was immaterial to the proper analysis, since the third *Walker* factor looks at "whether *the plaintiff alleges* anything specific about the means of infringement." *Walker*, 210 F. Supp. 3d at 505 (citing *Newsome v. Brown*, No. 01 Civ. 2807, 2005 WL 627639, at *5-6 (S.D.N.Y. Mar. 16, 2005)) (emphasis added). Moreover, IBM has not yet answered the allegations in the Complaint, and certainly did not admit infringement below. The District Court's observation about IBM's position thus rested on a very thin record owing to the early stage of the case.

Turning to the correct focus of this *Walker* factor—Xinuos's infringement allegations—the District Court failed to credit three full pages of allegations in the Complaint where Xinuos (i) explains how IBM obtained access to the Unix OS Code, (ii) identifies specific IBM operating system products in which copied code

29

appears, (iii) points to IBM product literature acknowledging the copying of at least some of the Unix OS Code, and (iv) describes advantageous features and functions that the copied code provides, as further evidence of the infringement. *See* JA___-___ [3/31/21 Compl., ¶¶ 55-69 (ECF No. 1)]. Thus, Xinuos *did* provide specific allegations about the means of IBM's infringement, and at a level of detail that was more than reasonable at the pleadings stage of the case. *Cf. Roberts II*, 2022 WL 976872, at *9 n.8 (observing that cases addressing the "ownership-infringement divide" are typically decided later in the case, based on a "more robust factual record"). The third factor therefore also supported a finding of an infringement claim.

The District Court's misapplication of the *Walker* analysis further demonstrates the error in its summary judgment ruling. Interpreted as intended by *Walker*, all four factors strongly favor a finding that Xinuos asserted a copyright infringement claim against IBM.

### D. IBM Never Claimed to Own the Unix OS Code or the Asserted Copyrights

Until opposing Xinuos's motion for reconsideration below, Defendants-Appellees had never argued that they were entitled to summary judgment because Xinuos's copyright infringement claim was actually a time-barred copyright ownership claim. Indeed, the first time the ownership-infringement issue was raised

as a basis for granting summary judgment on Xinuos's copyright infringement claim was the District Court's bench ruling granting the motion.[7]

In contrast to the District Court's characterization of Xinuos's Complaint as presenting an ownership claim, IBM did not dispute Xinuos's ownership of either the copyrights at issue or the underlying Unix OS Code. JA___ [3/6/23 SJ Reply at 4 (ECF No. 130)] ("*Xinuos's ownership of the asserted copyrights after 2011 is assumed for purposes of this motion*, which concerns SCO's retention of accrued claims, not Xinuos's lack of copyright ownership.") (emphasis added). Far from asserting any ownership rights, Defendants-Appellees claimed only that IBM was licensed to use the Unix OS Code:

> It is undisputed that IBM obtained the disputed code as part of Project Monterey. (¶ 48.) *The only dispute is whether IBM obtained a license to the code or used it without permission.* (¶¶ 19-20, 44.) IBM contends it obtained a license to the code, and if that is true, then Xinuos's infringement claim necessarily fails, as a person with a license does not infringe.

JA___ [3/6/23 SJ Mem. at 15 (ECF No. 122)] (emphasis added); *see also* JA___-___ [1/22/24 SJ Hr'g Tr. at 6:14-8:5] (recounting alleged facts regarding license),

---

[7] Defendants-Appellees cited two ownership-infringement cases in their opening memorandum—*Kwan* and *Big East Entertainment, Inc. v. Zomba Enterprises, Inc.*, 453 F. Supp. 2d 788 (S.D.N.Y. 2006)—but only in support of their argument that a two-year limitations provision in the Project Monterey JDA barred Xinuos's copyright infringement claim because it is allegedly based on a breach of the JDA. *See* JA___-___ [3/6/23 SJ Mem. at 16 and n.5 (ECF No. 122)].

JA___-___ [*Id.* at 30:22-31:10] (summarizing parties' dispute over alleged license)]; *SCO Grp.*, 879 F.3d at 1072 (discussing dispute over alleged license).

Given these facts, copyright *ownership* should never have been an issue below. It is well-settled that "[a] non-exclusive license conveys no ownership interest[.]" *Davis*, 505 F.3d at 101; *see also* 17 U.S.C. § 101 (defining "transfer of copyright ownership"). Accordingly, a dispute over whether IBM holds a non-exclusive license to use Xinuos's copyrighted code cannot reasonably be characterized as an ownership dispute.

As a practical matter, just as the district court observed in *PK Music*, "it makes little sense to construe Plaintiff's infringement claim against Defendants as an ownership claim when none of the parties assert that Defendants have any ownership rights in [the copyrighted work]." *PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215, 2018 WL 4759737, at *6 (S.D.N.Y. Sept. 30, 2018) (declining to construe claim as ownership claim for statute of limitations purposes); *accord Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 543 (S.D.N.Y. 2015) ("It makes no sense to say that Flo and Eddie's cause of action against Sirius accrued when it became aware of its disputed ownership rights against Sirius, because Sirius does not claim ownership of the copyrights and there is no ownership dispute between Flo and Eddie and Sirius."). Just like the defendants in *PK Music* and *Flo & Eddie*, IBM does not claim to have an ownership interest in Xinuos's copyrights

or the Unix OS Code, and thus it makes no sense to construe Xinuos's copyright infringement claim against IBM as an ownership claim.

In opposing Xinuos's motion for reconsideration below, Defendants-Appellees sought to confuse the issue before the District Court by characterizing IBM's claim to hold a non-exclusive license to create derivative works as an assertion of ownership in one of the individual rights in the so-called "bundle of discrete rights" that comprise a copyright. *See* JA___-___ [2/20/24 Opp'n to Mot. for Recon. at 6-7 (ECF No. 147)]. Again, however, "[a] non-exclusive license conveys no ownership interest[.]" *Davis*, 505 F.3d at 101.

Building on this flawed argument, Defendants-Appellees contended that Xinuos's dispute over IBM's alleged license rights "necessarily presents a dispute over IBM's ownership of its own proprietary works, too." JA___ [2/20/24 Opp'n to Mot. for Recon. at 8 (ECF No. 147)]. But Xinuos has never disputed IBM's ownership of the infringing operating systems, and that issue is beside the point in any case. For purposes of classifying Xinuos's claim as an infringement or ownership claim, the proper focus is solely on disputes over ownership of the asserted copyrights or the underlying work they protect, not ownership of the infringing product. *See Kwan*, 634 F.3d at 229 (identifying ownership of a valid copyright as a required element of an infringement claim and explaining that an

infringement claim is "time-barred as a matter of law where ... *the underlying ownership claim* is time-barred") (emphasis added).

Defendants-Appellees attempted to sow even more confusion by arguing that the District Court's finding of an ownership claim was correct because "the central question in IBM's summary judgment motion was whether SCO or Xinuos *owned* the Claim," referring to Xinuos's copyright infringement claim against IBM. JA___-___ [2/20/24 Opp'n to Mot. for Recon. at 1-2 (ECF No. 147)] (emphasis in original). As an initial matter, none of the cases on which the District Court principally relied to reclassify Xinuos's copyright infringement claim as an ownership claim involved a dispute over ownership of the right to sue for infringement. On the contrary, those cases all turned on whether the infringement claim involved a dispute over ownership *of the asserted copyrights or the underlying works. See Kwan*, 634 F.3d at 229 (finding complaint asserted ownership claim where dispute centered on whether plaintiff was a co-author of the copyrighted work or merely an editor); *Walker*, 210 F. Supp. 3d at 505-06 (finding complaint asserted ownership claim where parties disputed which of them created logo and thus owned copyright); *Roberts II*, 2022 WL 976872, at *9-10 (finding amended complaint asserted infringement claim in part because it alleged that defendants acknowledged plaintiff's sole ownership of the asserted copyright).

For the foregoing reasons, the District Court erred in finding that IBM's claim to hold a nonexclusive license to use the Unix OS Code constituted a challenge to Xinuos's ownership of the code. The District Court then compounded that error by reframing the *Walker* ownership factors to focus instead on the mere assertion of "rights" in the copyrighted code.

## III. THE DISTRICT COURT COULD NOT PROPERLY HAVE GRANTED SUMMARY JUDGMENT ON ANY OF THE THEORIES DEFENDANTS-APPELLEES ARGUED BELOW

The District Court decided on its own to analyze Xinuos's copyright infringement claim as a potentially time-barred copyright ownership claim, as Defendants-Appellees did not argue for summary judgment on that basis. Instead, Defendants-Appellees presented three main arguments: (1) Xinuos lacked standing to sue IBM for copyright infringement because SCO retained that right when it sold the Unix OS Code and associated copyrights to Xinuos; (2) SCO released IBM from liability for any claim of copyright infringement, including for infringement occurring after Xinuos' acquired the Unix OS Code and associated copyrights; and (3) Xinuos's copyright infringement claim arose from a breach of the Project Monterey JDA twenty years ago, and thus had to have been brought within two years of the breach under the terms of the JDA. JA___-___ [3/6/23 SJ Mem. at 7-24 (ECF No. 122)]. Had the District Court decided the motion on any of those asserted

grounds, the motion should have been denied as a matter of law and/or due to the existence of disputed issues of material fact, as discussed below.

### A. SCO Did Not Retain the Right to Sue IBM for Future Copyright Infringement When It Sold the Unix OS Code and Copyrights to Xinuos

Defendants-Appellees' argument that Xinuos lacked standing because any right to sue IBM for copyright infringement was purportedly retained by SCO is contrary to law. A claim for copyright infringement accrues only to the "legal or beneficial owner of an exclusive right under a copyright," and only for "any infringement of that particular right committed *while he or she is the owner of it*." 17 U.S.C. § 501(b) (emphasis added). Accordingly, this Court has consistently reaffirmed that it is not legally possible for a party to hold a right to sue if they are not either the owner of the copyright or a holder of an exclusive right recognized by the Copyright Act. *See, e.g.*, *John Wiley*, 882 F.3d at 401-10 (purported assignment of bare right to sue for copyright infringement is invalid and will not confer standing to sue on purported assignee); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("[T]he Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf."); *accord Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169-70 (9th Cir. 2013).

When a copyright is assigned, it is not legally possible for the assignor, such as SCO here, to retain a bare right to sue for infringement of the assigned copyright.

*See e.g.*, *Fathers & Daughters Nev., LLC v. Lingfu Zhang*, 284 F. Supp. 3d 1160, 1170 (D. Or. 2018) ("[A]greements and assignments cannot convey simply a right to sue, because a right to sue is not an exclusive right under the Copyright Act. … If a party cannot transfer a simple right to sue, the Court finds that a party similarly cannot retain a simple right to sue.") (citing *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 987-88 (9th Cir. 2017)); *see also Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*, 839 F. App'x 95, 98 (9th Cir. 2020) (where agreement transfers all of seller's assets including copyrights, seller cannot retain a "right to sue" on those copyrights).

The Ninth Circuit's decision in *Righthaven* is instructive. There, a copyright assignment agreement purported to give the assignor all rights "to seek redress for past, present, and future infringements of the copyright … in and to the Work," but the assignor did not retain ownership of any exclusive right to reproduce, prepare derivative works or distribute copies. *Righthaven*, 716 F.3d at 1168-70. The Ninth Circuit held that because the assignor did not retain ownership of the copyrights or any exclusive right under the Copyright Act, it had no standing to sue on those copyrights notwithstanding contract language that purported to provide "all copyrights requisite" to accomplish filing of the suit. *Id.* Similarly, SCO did not retain ownership of any exclusive right to the Unix OS Code and thus lacked standing to sue for infringements occurring after it sold that code to Xinuos.

37

The Second Circuit has applied the reasoning of *Righthaven* to preclude holders of purported bare rights to sue from pursuing copyright claims. In *John Wiley*, for example, an assignment agreement only conveyed to the plaintiff "(1) an interest in the images for registration purposes, and (2) the bare right to sue for infringement." *John Wiley*, 882 F.3d at 413. The relationship was non-exclusive and the agreements provided that the plaintiff would reassign the copyrights back to the photographers "upon completion of the registration of the Images … and resolution of infringement claims brought by [plaintiff.]" *Id.* at 400, 411-14. This Court determined—based on an in-depth analysis of the Copyright Act, federal common law, and precedent—that "the [Copyright] Act does not permit a plaintiff assignee to bring a claim for infringement without also having or having had a legal or beneficial ownership in some exclusive right under part of the allegedly infringed copyright." *Id.* at 401-10. Because the agreements did not convey an exclusive right in any of the six rights enumerated in 17 U.S.C. § 106, but merely a right to sue, DRK lacked standing. *Id.*

As for the case at hand, put simply, "[i]f a party cannot transfer a simple right to sue, [] a party similarly cannot retain a simple right to sue." *Fathers & Daughters*, 284 F. Supp. 3d at 1170. Contrary to Defendants-Appellees' argument below, SCO could not have retained the right to sue IBM for infringements occurring after SCO sold the Unix OS Code and associated copyrights to Xinuos in 2011, and

consequently SCO could not have released IBM from liability for any such claim a decade later. To the extent Defendants-Appellees suggest that this argument provides the Court with an alternative ground for affirming the District Court's grant of summary judgment, they are wrong.

### B. The SCO-IBM Settlement Did Not Resolve the Disputed Issue of Whether IBM Is Licensed to Use the Unix OS Code

Xinuos does not dispute that *if* SCO granted IBM a perpetual non-exclusive license to use the Unix OS Code during Project Monterey, then Xinuos's ownership rights in the code and associated copyrights would have been encumbered by that license. *See* 17 U.S.C. § 205(e) (providing that a nonexclusive license prevails over a conflicting transfer of ownership if the license is evidenced by a written instrument signed by the owner of the rights licensed); *see also Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 194 (2d Cir. 1985) ("[A]n assignee of a copyright can take no more than his assignor has to give.") (citing *Bong v. Alfred S. Campbell Art Co.*, 214 U.S. 236, 245-47 (1909)). The scope of any such license, however, would have been limited under the terms of the JDA.

According to the JDA, if IBM had included any of the Unix OS Code in a "general availability" release of the IA-64 product to which Project Monterey was directed, IBM would have been granted a perpetual, non-exclusive, royalty-free license to continue using the code that was included in the general availability release. *See* JA___ [JDA, § 2.0(d)(2) at 7 (ECF No. 124-04)]; JA___ [JDA Amend.

39

5, § 2 at 12 (ECF No. 127-04)]. Absent such a general availability release of the IA-64 product, however, termination of the JDA meant that IBM was permitted to continue using the Unix OS Code only for "the development of IA-64 Product Release 1" (*i.e.*, the general availability release). JA__ [JDA Amend. 5, § 2 at 12 (ECF No. 127-04)]. IBM tried and failed to convince Santa Cruz to grant broader rights that could have permitted IBM to use the Unix OS Code in other OS products. *See* JA___ [JDA Suppl. C (unsigned), § 7.3 at 3 (ECF No. 127-05)].

Whether IBM satisfied the contractual requirements for obtaining *any* license to continue using the Unix OS Code after the termination of Project Monterey was disputed in the Utah Litigation. *See SCO Grp.*, 879 F.3d at 1072 (in reversing the district court's grant of summary judgment in favor of IBM on SCO's misappropriation claim, the Tenth Circuit observed that a reasonable jury could find that IBM did not satisfy the requirements for a license to the relevant code). Contrary to Defendants-Appellees' argument below, that issue was not resolved by the 2021 settlement agreement between SCO and IBM, let alone resolved in IBM's favor.

By its express terms, SCO's release of its asserted misappropriation claim and any unasserted copyright infringement claims against IBM was not a resolution of those claims (or the underlying factual disputes) in IBM's favor. *See* JA___ [8/17/21 SCO-IBM Settlement and Release, ¶ 4.1 at 11 (ECF No. 124-45)] (stating that "[t]his Settlement Agreement involves allegations that are denied by the Parties, and

nothing contained herein shall be construed as an admission by the Parties of any liability of any kind with respect thereto"). Thus, while IBM made much of the release it secured from SCO in its briefing below, SCO merely released IBM from liability for any possible claim of copyright infringement that SCO could have asserted against IBM—it was not an acknowledgement by SCO that IBM had satisfied the requirements for a continuing license under the Project Monterey JDA.

Defendants-Appellees did not move for summary judgment based on IBM's alleged non-exclusive license to use the Unix OS Code, which is not surprising given the factual disputes underlying this *de facto* license defense. *See, e.g.*, JA___-___ [Rule 56.1 Resp. at 6-8] (disputing Defendants-Appellees' factual allegations regarding IBM's alleged license rights); JA___-__ [1/22/24 SJ Hr'g Tr. at 7:11-8:10, 30:22-31:19] (District Court recounting disputed issues of fact regarding alleged license). IBM should have been required to prove that it is licensed to use the Unix OS Code before the District Court relied on the existence of the alleged license to (erroneously) classify Xinuos's claim as an ownership claim. *See, e.g.*, *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) ("The existence of a license is an affirmative defense, placing upon the party claiming a license 'the burden of coming forward with evidence' of one.") (quoting *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)); *accord Baker v. Weber*, No. 19 Civ. 1093, 2021 WL 4480998, at *6 (S.D.N.Y. Sept. 30, 2021). The District Court erroneously relieved

IBM of that burden in treating IBM's *de facto* license defense as a challenge to Xinuos's ownership of the Unix OS Code.

### C. Xinuos's Copyright Infringement Claim Did Not Arise from a Breach of the Project Monterey JDA

Finally, Defendants-Appellees' argument that Xinuos's copyright infringement claim is time-barred under the Project Monterey JDA likewise does not provide an alternative basis for affirming the District Court's decision. Defendants-Appellees essentially argued below that IBM's open use of the Unix OS Code after termination of Project Monterey would have been a breach of the JDA if IBM had not secured a continuing license to the code, and any claim for that alleged breach had to be brought by SCO long before Xinuos acquired the code. *See* JA___-__ [3/6/23 SJ Mem. at 21-24 (ECF No. 122)]. But IBM's argument presents a false dichotomy because the question of whether IBM is licensed has nothing to do with whether it breached the JDA.

Defendants-Appellees alleged below that IBM satisfied the JDA's contractual requirements for securing a continuing license to the Unix OS Code and Xinuos duly contested that allegation—not because IBM breached the JDA, but rather because IBM failed to satisfy the conditions necessary to earn the license. *See* JA___-___ [3/6/23 Resp. to Rule 56.1 Stmt. at 6-9]. A failure to satisfy contractual requirements for triggering a conditional license, however, is not a breach of contract. *See Sohm*, 959 F.3d at 46-47 (failure to meet conditions that would entitle defendant to a license

"sound in copyright infringement, not breach of contract") (internal quotation marks and citation omitted); *Wood v. Laughlin*, 103 A.D.2d 881, 881 (N.Y. App. Div. 1984) (where "a condition precedent" would trigger a right, "the failure of the condition … is not a breach of contract"); *Merritt Hill Vineyards v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 113 (N.Y. 1984) ("failure to fulfill a condition … is not, without an independent promise to perform the condition, a breach of contract"). Thus, like the other arguments below that the District Court did not adopt, Defendants-Appellees' "breach of contract" argument cannot salvage the erroneous summary judgment ruling.

### D. This Court Should Not Rule on Any of Defendants-Appellees' Arguments in the First Instance

As demonstrated above, the District Court did not grant summary judgment based on any of the three theories that Defendants-Appellees presented in support of their motion. *Compare* [3/6/23 SJ Mem. (ECF No. 122)] *with* [1/22/24 SJ Hr'g Tr.]. Of course, this Court has authority to affirm a district court's decision on any grounds supported by the record. *See, e.g., Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*, 110 F.4th 106, 113 (2d Cir. 2024). Here, however, given the factual complexity of the record, if the Court views any of Defendants-Appellees' theories as potentially meritorious the appropriate remedy would be to remand the case back to the District Court to address the issues in the first instance. *See Venticinque v. Back to Nature Foods Co.*, No. 23-cv-1236, 2024 WL 3385136,

at *2 (2d Cir. July 12, 2024) (declining to rule on preemption defense not addressed by the district court in the first instance); *see also Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 208 (2d Cir. 2003) ("It is this Court's usual practice to allow the district court to address arguments in the first instance.").

## CONCLUSION

For the foregoing reasons, Xinuos respectfully requests that the Court reverse the District Court's grant of summary judgment in favor of Defendants-Appellees on Xinuos's copyright infringement claim.

Dated: July 8, 2025

Respectfully submitted,

_/s/ Mark M. Supko_

Mark M. Supko
Mark A. Klapow
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel.: (202) 624-2500
msupko@crowell.com
mklapow@crowell.com

Warrington S. Parker, III
Jacob S. Canter
Joachim B. Steinberg
CROWELL & MORING LLP
Three Embarcadero Center
26th Floor
San Francisco, CA  94111
Tel.: (415) 986-2800
wparker@crowell.com
jcanter@crowell.com
jsteinberg@crowell.com

*Counsel for Plaintiff-Appellant Xinuos, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the word limitation of Local Rule 32.1(a)(4), containing 10,685 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), having been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: July 8, 2025            Respectfully submitted,

_/s/ Mark M. Supko_
Mark M. Supko
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel.: (202) 624-2500
msupko@crowell.com

*Counsel for Plaintiff-Appellant Xinuos, Inc.*