25-1073
*Xinuos, Inc. v. IBM*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of August, two thousand twenty-six.

PRESENT: GUIDO CALABRESI,
STEVEN J. MENASHI,
SARAH A. L. MERRIAM
*Circuit Judges,*

---

XINUOS, INC.,

*Plaintiff-Appellant,*

v. No. 25-1073

INTERNATIONAL BUSINESS MACHINES CORPORATION AND RED HAT, INC.,

*Defendants-Appellees.*[*]

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

| | |
|---|---|
| *For Plaintiff-Appellant*: | MARK M. SUPKO, Crowell & Moring LLP, Washington, DC (Mark A. Klapow, Crowell & Moring LLP, Washington, DC, Warrington S. Parker, III, Joachim B. Steinberg, Jacob S. Canter, Crowell & Moring LLP, San Francisco, CA, *on the brief*). |
| *For Appellee*: | DAVID R. MARRIOTT, Latham & Watkins LLP, New York, NY (Serena Candelaria, Latham & Watkins LLP, New York, NY, Blake E. Stafford, Uriel Hinberg, Latham & Watkins LLP, Washington, DC, *on the brief*). |

Appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Xinuos, Inc., appeals from an order of the district court granting summary judgment to Defendant-Appellee International Business Machines Corporation ("IBM") on Xinuos's copyright claim against IBM. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

**I**

In 1998, IBM and The Santa Cruz Operation, Inc., ("Santa Cruz") entered a joint development project called Project Monterey. The purpose of the joint venture was to develop and market a "family" of UNIX-based computer operating systems, including versions for the then-forthcoming IA-64 Intel processor, IBM's proprietary "Power" processor architecture. Project Monterey was governed by a Joint Development Agreement ("JDA"). Pursuant to the JDA, Santa Cruz and IBM agreed to provide resources and technology to create a family of UNIX-based

operating systems, and each party granted the other a license to use the code supplied during the project. The JDA included a statute of limitations provision, pursuant to which the parties agreed that any claim "related to a breach of [the JDA] must be commenced no later than two (2) years from the date of the breach." J. App'x 229-30 (JDA § 22.3). Project Monterey encountered serious challenges, and in 2000 Santa Cruz announced that it was selling much of its business to Caldera Systems, Inc. ("Caldera"). As a result, IBM exercised its rights under the JDA to terminate Project Monterey in 2001.

**A**

In March 2003, Caldera filed a lawsuit against IBM in the District of Utah. Caldera, which later changed its name to SCO Group, alleged that IBM engaged in unfair competition by misappropriating source code that Santa Cruz provided to IBM during Project Monterey and by incorporating that source code into IBM's operating systems. According to SCO Group, IBM did not obtain a license to use the Monterey Code outside of Project Monterey, so IBM's use of the code constituted unfair competition.[1]

In 2007, SCO Group filed for bankruptcy in the District of Delaware. In January 2011, in connection with its bankruptcy proceeding, SCO Group sold almost the entirety of its software business to Xinuos pursuant to an Asset Purchase Agreement ("APA"). The APA granted Xinuos rights to certain "Acquired Assets," but it expressly carved out from the sale "Excluded Assets." J. App'x 134-35 (APA § 2.1(a), (c)). The APA provided that the Acquired Assets did not include "any rights, claims or causes of action related to" IBM and certain

---

[1] SCO Group sought leave to amend its complaint a third time to add a copyright infringement claim based on the same alleged misappropriation of the Monterey Code that formed the basis of its unfair competition claim, but the district court denied the motion as untimely.

other companies. *Id.* at 135 (APA § 2.1(a)(vi)). In March 2011, the bankruptcy court approved the asset sale.

Following an administrative pause, the litigation in the District of Utah continued. In August 2013, in response to IBM's motion for partial summary judgment, SCO Group explained to the district court that the "core allegations" of its "remaining claims" included that "[i]n connection with Project Monterey, IBM misappropriated into its AIX for Power operating system UnixWare source code that SCO provided to IBM subject to strict restrictions that IBM did not follow." Memorandum in Opposition at 3, *SCO Group v. IBM*, No. 3-CV-294 (D. Utah Aug. 29, 2013), ECF No. 1130. In February 2016, the district court granted summary judgment to IBM on SCO's three remaining claims, including the misappropriation claim concerning Project Monterey. *See* Order, *SCO Group v. IBM*, No. 3-CV-294 (D. Utah Feb. 5, 2016), ECF No. 1159 (granting motion for partial summary judgment on misappropriation claim); Order, *SCO Group v. IBM*, No. 3-CV-294 (D. Utah Feb. 8, 2016), ECF No. 1160 (granting motion for summary judgment on tortious interference claims).

On appeal, the Tenth Circuit largely affirmed the district court but remanded the misappropriation claim for trial. *See SCO Group, Inc. v. IBM*, 879 F.3d 1062, 1086 (10th Cir. 2018). The Tenth Circuit concluded that the misappropriation claim was related to a breach of the JDA and was therefore governed by the two-year limitations period contained in the JDA, but the Tenth Circuit concluded that the claim was timely. *See id.* at 1078-80.

In August 2021, SCO Group and IBM reached an agreement to settle the Utah litigation. Under the proposed Settlement Agreement, SCO Group agreed to release IBM "from any and all claims … concerning, related to, arising out of, or arising from the Utah Litigation, the Proof of Claim or IBM's relationship with the Debtors or their estates, Project Monterey, or IBM's relationship with the Debtors or their estates." J. App'x 478 (Settlement Agreement § 3.1). The Settlement Agreement further provided that the release included all "causes of actions and

other legal or equitable rights and remedies relating to … all rights and interests in all litigation claims pending or that may be asserted in the future against IBM and Red Hat." *Id.* Xinuos objected to the settlement in the bankruptcy court on the ground that the Settlement Agreement could be read to "encompass Xinuos'[s] claims against IBM and Red Hat." *Id.* at 486. The bankruptcy court overruled the objection and approved the settlement. Pursuant to the parties' stipulated dismissal of all claims, the district court in Utah dismissed SCO Group's remaining claim against IBM with prejudice. *See* Order, *SCO Group v. IBM*, No. 3-CV-294 (D. Utah Nov. 5, 2021), ECF No. 1182.

**B**

On March 31, 2021, Xinuos initiated this case against IBM and Red Hat.[2] The complaint asserted, *inter alia*, a claim for copyright infringement against IBM, alleging that IBM copied Xinuos's proprietary software code and incorporated it into IBM's operating system. *See* Complaint ¶¶ 14, 55-73, 175-83, *Xinuos, Inc. v. IBM*, No. 22-CV-9777 (S.D.N.Y. Mar. 31, 2021), ECF No. 1. In particular, the complaint alleged that "[t]hrough Project Monterey, IBM gained confidential access to [certain source code]" and that "[d]espite not having acquired any rights in the Code, IBM used the stolen Code, and incorporated it into core components" of its AIX (and other) operating systems. *Id.* at ¶¶ 56-60. IBM filed a motion for summary judgment on Xinuos's copyright infringement claim. *See* Motion for Summary Judgment, *Xinuos, Inc. v. IBM*, No. 22-CV-9777 (S.D.N.Y. Mar. 6, 2023), ECF No. 121.

The district court granted IBM's motion for summary judgment in a bench ruling. *See* Minute Entry, *Xinuos, Inc. v. IBM*, No. 22-CV-9777 (S.D.N.Y. Jan. 22, 2024). It explained that "the operative question" was "when the claim accrued." Special App'x 31. Although Xinuos styled its action as a claim for copyright

[2] Xinuos's claims against Red Hat have been dismissed with prejudice pursuant to the parties' joint stipulation of voluntary dismissal. *See* Judgment, *Xinuos, Inc. v. IBM*, No. 22-CV-9777 (S.D.N.Y. Apr. 2, 2025), ECF No. 256.

infringement, and an infringement claim accrues each time an infringing act occurs, the district court concluded that Xinuos's claim was more analogous to an "ownership claim," which accrues only once, when the "plaintiff knows or has reason to know of the injury upon which the claim is premised." *Id.* at 32 (quoting *Big E. Ent. v. Zomba Enters.*, 453 F. Supp. 2d 788, 794 (S.D.N.Y. 2006), *aff'd* 259 F. App'x 413 (2d Cir. 2008)). The district court acknowledged that "ownership is not precisely what is at issue here," but it nevertheless thought "the analysis ought to be the same" because the dispute concerned "[w]hether IBM had a right to use the code at all." *Id.* at 34, 37. As such, "the claim accrued well before Xinuos acquired its interest in the code in 2011." *Id.* at 37. When it accrued, "the claim belonged to SCO, and SCO has released [IBM] from it." *Id.* at 38.

The district court denied Xinuos's motion for reconsideration. *See* Minute Entry, *Xinuos, Inc. v. IBM*, No. 22-CV-9777 (S.D.N.Y. Apr. 3, 2024). It entered final judgment on April 2, 2025. *See* Judgment, *Xinuos, Inc. v. IBM*, No. 22-CV-9777 (S.D.N.Y. Apr. 2, 2025), ECF No. 256. This appeal followed.

**II**

On appeal, Xinuos argues that the district court erred in concluding that its claim was an ownership claim for purposes of accrual. Xinuos argues that IBM never purported to own the copyrighted code, only to hold a non-exclusive license to use the code pursuant to the JDA, and a dispute over the existence or scope of a non-exclusive license is an infringement dispute rather than an ownership dispute. Because infringement claims accrue each time a new act of infringement occurs, Xinuos reasons that its infringement claim against IBM is timely.

We disagree. The district court correctly treated Xinuos's claim as one that accrued only once, when Xinuos first became aware that IBM claimed the right to use Project Monterey source code in its other products. SCO Group litigated the claim that IBM misappropriated the source code from Project Monterey for years in the Utah litigation before reaching a settlement agreement with IBM. Xinuos's copyright claim is based on the same underlying factual allegations as SCO

Group's misappropriation claim. And that claim turned on whether IBM violated the terms of the JDA when it used the source code it obtained through Project Monterey. For that reason, IBM argues that Xinuos's claim is subject to the two-year statute of limitations provision in the JDA because it relates to a breach of the JDA. Regardless of the merits of that argument, however, Xinuos would have been aware that IBM claimed the right to use the code no later than 2011, when it finalized the APA that expressly referenced SCO Group's misappropriation claim. Even if we were to apply the three-year statute of limitations of the Copyright Act, Xinuos's copyright claim filed in 2021 would be barred.

**A**

A civil action under the Copyright Act must be brought "within three years after the claim accrued." 17 U.S.C. § 507(b). We have drawn a distinction for accrual purposes between a copyright claim that is about *ownership* and a copyright claim that is about *infringement*. "An ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). "By contrast, an infringement action may be commenced within three years of any infringing act, regardless of any prior acts of infringement." *Id.* We have explained that when a dispute "does not involve the nature, extent or scope, of copying … ownership forms the backbone of the 'infringement' claim at issue." *Id.* at 229. When both types of claims are raised, "a time-barred ownership claim will bar a claim for copyright infringement where … the infringement claim cannot be decided without adjudication of … ownership." *Id.* at 226.

The district court relied on this case law in concluding that Xinuos's claim was tantamount to an ownership claim that accrued when SCO became aware of IBM's alleged misuse of the source code. We disagree with the district court's suggestion that Xinuos's claim could properly be characterized as an ownership claim. In the briefing before the district court and on appeal, the parties described

the dispute as concerning whether IBM "received, under the JDA, rights to use the code to create derivative works from it." Appellee's Br. 37. IBM does not dispute that Xinuos owns the copyrighted code or that IBM took the code from Project Monterey and incorporated it into its products, which it continues to iterate and release for sale.[3] But IBM has maintained through decades of litigation that it had a right to do so. In other words, the parties have framed the dispute in this case as concerning IBM's right to use the Project Monterey code, which reflects a dispute over a license rather than a dispute over the ownership of the code. *See Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) ("A non-exclusive license conveys no ownership interest.").

For purposes of accrual, however, the district court was correct to conclude that Xinuos's claim—though styled as an infringement claim—accrued only once. The district court recognized that the dispute in this case concerns whether IBM had a right to use the code to which it gained access through Project Monterey. IBM has never disputed that it took and incorporated the Project Monterey code into its own products; it has instead argued that it had a legal right to do so pursuant to the terms of the JDA. As a result, this dispute "does not involve the nature, extent or scope, of copying," *Kwan*, 634 F.3d at 229, but rather whether IBM had the legal right to use the code that it has claimed since 2001.

SCO Group disagreed that IBM had a right to use the code, and that disagreement spawned the Utah litigation, in which SCO Group alleged that IBM misappropriated the code from Project Monterey in violation of the JDA. SCO

---

[3] *See* Memorandum of Law at 15, *Xinuos, Inc. v. IBM*, No. 22-CV-9777 (S.D.N.Y. Mar. 6, 2023), ECF No. 122 ("It is undisputed that IBM obtained the disputed code as part of Project Monterey. The only dispute is whether IBM obtained a license to the code or used it without permission.") (citations omitted); *see also* Reply Memorandum of Law at 3, *Xinuos, Inc. v. IBM*, No. 22-CV-9777 (S.D.N.Y. Mar. 6, 2023), ECF No. 130 ("Whether IBM infringes the asserted copyrights based on its use of the disputed code depends on whether IBM stole the code in breach of the JDA (as Xinuos incorrectly alleges) or obtained a license to the code under the JDA (as IBM believes).").

Group ultimately released IBM from this claim in the Settlement Agreement. But the operative question in the Utah litigation was whether IBM was permitted to take the code that it obtained through Project Monterey after the joint venture ended. And although IBM continues to use the code in its products today, the contested action—IBM's taking of the code in 2001—was a one-time event. We conclude that a claim challenging IBM's misappropriation of the Project Monterey code accrued when IBM first began openly using the code in its products allegedly in violation of the JDA.

Xinuos is correct that district courts in this circuit have treated a dispute over the scope of a licensing agreement as an infringement claim rather than an ownership claim.[4] But this dispute does not concern the *scope* of a licensing agreement. It instead concerns whether IBM satisfied the conditions precedent to bring about the *existence* of a valid license in the first place. Xinuos acknowledges in its brief on appeal that its "position from the beginning of this case" has been that "IBM failed to satisfy the contractual requirements for obtaining a continuing non-exclusive license to use the code for any other purpose" beyond Project Monterey. Appellant's Br. 26 n.6. It explains that "[t]he only dispute is whether IBM obtained a license to the code or used it without permission." *Id.* at 27 (quoting Memorandum of Law, *supra* note 3, at 15). And Xinuos does not identify any authority precluding the intuitive conclusion that a dispute over the existence of a license "focuses on competing assertions of … rights in the work at issue," *Roberts*

---

[4] *See, e.g.*, *Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 437 (S.D.N.Y. 2020) (analyzing a copyright claim as an infringement claim because "the gravamen of plaintiffs' claim is defendant's refusal to recognize their termination rights," which "are, by their very nature, about the 'nature, extent, or scope of copying' a particular work"); *Roberts v. BroadwayHD LLC*, No. 19-CV-9200, 2022 WL 976872, at *9 (S.D.N.Y. Mar. 31, 2022) (analyzing a copyright claim as an infringement claim because the "claim in essence" was that the defendants "received a limited license" and then "exceeded the scope of that license").

*v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 730-31 (S.D.N.Y. 2021) (citing *Kwan*, 634 F.3d at 229), so the claim accrues only once.

This type of copyright claim "accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Kwan*, 634 F.3d at 228 (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). Xinuos's current suit relies on the same factual allegations that formed the basis of SCO Group's misappropriation claim against IBM in the Utah litigation. The Tenth Circuit concluded that "there is no question that SCO's misappropriation claim is 'related to' a breach of the JDA because the JDA expressly deals with the use of SCO's licensed materials." *SCO Group*, 879 F.3d at 1079. Xinuos's claims in this case, based on the same factual predicate as SCO's misappropriation claim in the Utah litigation, might similarly "relate to" a breach of the JDA.

But even if we were to give Xinuos the benefit of the three-year statute of limitations of the Copyright Act, and even if we were conclude that Xinuos would not have known that IBM claimed a license to use the code until the conclusion of the Asset Purchase Agreement in 2011, Xinuos's claim filed in 2021 would still be time-barred. Even though IBM continues to engage in the use of the code, "a time-barred ownership claim" or a time-barred existence-of-license claim "will bar a claim for copyright infringement where … the infringement claim cannot be decided without adjudication of" the original right to use the work. *Kwan*, 634 F.3d at 226. Accordingly, we conclude that the district court properly granted summary judgment to IBM.

*     *     *

We have considered Xinuos's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court